**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**September 20, 2013**

# In the Court of Appeals of Georgia

A13A0825. POLLY v. THE STATE.

BRANCH, Judge.

After he pled guilty to 55 counts of criminal factoring of financial transaction card records,[1] 39 counts of theft by conversion,[2] four counts of theft by taking,[3] and one count of theft by deception,[4] Randy Lee Polly was sentenced to twenty years, with eight months to serve in confinement and the balance to be served on probation. As a special condition of his probation, Polly was required, among other things, to pay

---

[1] OCGA § 16-9-36.1.

[2] OCGA § 16-8-4.

[3] OCGA § 16-8-2.

[4] OCGA § 16-8-3.

$30,000 in restitution to his victims.[5] The restitution was to be paid in monthly installments of $500 over a period of five years, beginning with Polly's release from jail. After he violated his probation, the conditions of Polly's probation were subsequently amended to require him to provide proof of any earned income, a written statement of his monthly expenses, and proof of any child support payments he made. The State petitioned to revoke Polly's probation after he consistently failed to meet the conditions thereof. Following a hearing, the trial court granted that petition. Polly thereafter filed a motion for an out-of-time appeal from the revocation order, which the trial court granted. Polly then filed what he termed a "second amended motion for new trial," seeking a new hearing on the issue of his probation revocation. Following an evidentiary hearing, the trial court denied this motion. Polly subsequently filed an application for a discretionary appeal, which we granted.

On appeal from the denial of his motion for a new probation revocation hearing, Polly argues that the trial court illegally increased his sentence when it modified the conditions of his probation so as to require Polly to provide proof of any child support payments he made. He further contends that the trial court erred when it revoked his

_____

[5] The victims were a husband and wife who had previously employed Polly to manage a sporting goods store they owned.

entire probation for failure to provide proof of child support payments, as that requirement represented a general, rather than special, condition of his probation. Polly also asserts that the trial court erred when it revoked his probation without determining whether Polly had the ability to make both the required monthly restitution payments and his child support payments. Additionally, Polly argues that the trial court should have reduced the amount of restitution he was ordered to pay by the amount of restitution paid to the victims by his co-defendant. Finally, Polly claims that he received ineffective assistance of counsel with respect to his probation revocation. We find no error and affirm.

The record shows that Polly entered his guilty plea in December 2007 pursuant to an agreement he negotiated with the State. At the plea hearing, the State made clear to the trial court and to Polly that the only reason it was not asking to have Polly serve more time in prison was because it wanted his victims to receive restitution.

In June 2008, Polly was arrested for probation violations, including the fact that he was seriously delinquent on his restitution payments. The State thereafter filed a petition to revoke Polly's probation, and on September 18, 2008, the trial court held a hearing on that petition. At that hearing, Polly admitted the probation violations set forth in the State's petition. His lawyer, however, argued that Polly was financially

unable to pay $500 per month in restitution, in part because Polly had child support obligations of $192 per week. The attorney therefore suggested that the court reduce the amount of the monthly payments. The trial court refused to lower those payments, noting that Polly's probated sentence was based on his agreement, negotiated with the State, to pay a minimum of $500 per month in restitution. The court explained to Polly that he had committed serious crimes, that he would probably have to work two or three jobs to be able to keep up with his financial obligations, but that meeting the obligation of restitution was the only thing keeping Polly from serving a significant prison sentence. The trial court then revoked Polly's probation for the amount of time he had been jailed awaiting the revocation hearing and reinstated his probation with all of the original conditions and two new conditions. One of those conditions required Polly to provide his probation officer with proof of any earned income, a written statement of his expenses, and proof of any child support payments he made. The second condition required Polly to provide a copy of his income tax return no later than May 1 of each year.

Following the revocation hearing and his release from jail, Polly did not comply with any of the conditions of his probation. Specifically, he failed to report to his probation officer, to make any payments towards restitution or his court-imposed

4

fines, or to provide a written statement of his expenses and proof of child support payments. In December 2008, therefore, the State filed a second petition to revoke Polly's probation. Polly testified at the hearing on that petition, and admitted that he had not complied with any of his probation conditions. At the conclusion of his testimony, Polly was asked by his attorney if there was anything else he wanted to say to the court. Polly responded:

> Yes. . . . I'm tired of being on probation. I mean, the bottom line is, . . . whatever has to be done, I mean I can't pay $500 a month like y'all are asking. I can't do it. My kids are starving to death. I've been locked up eight months.. . . I've tried every way in my power to pay this and, I'm sorry, if you're going to take my probation, just take it all, because [revoking] two years ain't going to do nothing, because I'm going to be right back in here again, because I cannot pay $500 a month.

His lawyer then asked Polly if he understood he was "facing a very long, serious prison sentence," and Polly stated that he did. Polly's attorney then asked, "You want your entire probation revoked?"; Polly replied, "Yes."

During his closing argument, Polly's attorney stated that his client could not pay restitution and therefore the court's only choice was to revoke probation.[6] Polly's

---

[6] The State argued that the trial court should revoke only seven or eight years of Polly's probation and leave the restitution requirement in place.

lawyer also told the court, "I've gone over this extensively with Mr. Polly. He is very aware that if the court revokes the entire balance, he could literally spend the next . . . 18 years of his life in prison." Immediately after this statement, the lawyer turned to Polly and the following exchange took place:

[Attorney]: You [Polly] realize that you would not get out of jail, very possibly, until [you were] 54 years old?

[Polly]: I can't pay it.

[Attorney]: That's what you're asking the court to do here today?

[Polly]: Yes.

[Attorney]: With the full knowledge you could spend, day for day, the next 18 years in prison?

[Polly]: [Nods head affirmatively.]

Following this exchange in open court, the trial judge announced he was revoking the balance of Polly's probation, explaining: "Probation is a privilege, and when this court is faced with a situation [where the evidence shows that] a probationer has absolutely failed and thus refused . . . to perform any term and condition of probation, then the court would be doing a disservice to the public to expect that Mr.

6

Polly would [make] any additional effort to be compliant with probation." The judge then asked Polly whether he knew the sentence that had just been imposed, and Polly stated that he did. The court then asked Polly, "And that's the sentence you asked the court to impose, correct?"; Polly replied, "Yes."

At the hearing on his motion for a new probation revocation hearing, Polly testified that his request that probation be revoked was based on the advice of his attorney, who told him that he would likely serve only two years before being paroled. Additionally, Polly claimed that his failure to comply with the condition that he pay restitution resulted from the trial court's imposition of the additional condition that he provide proof of any child support payments he made. Polly explained that given this requirement, he felt compelled to make the weekly child support payments. And because he was now compelled to make his child support payments, he could not also make the required restitution payments. Notably, however, Polly did not provide any proof that he had, in fact, made any child support payments.

1. Polly first contends that the trial court erred when it modified the conditions of his probation to require him to provide proof of child support payments, because this new condition constituted an illegal increase in his sentence. We disagree.

Under Georgia law, a trial court has the power to modify or change the conditions of a defendant's probation at any time, provided the change or modification does not represent an increase in the defendant's sentence. See *Staley v. State*, 233 Ga. App. 597, 599 (505 SE2d 491) (1998); OCGA § 42-8-34 (g). Polly asserts that the requirement he provide proof of the child support payments he made illegally increased his sentence, because it increased the monthly amount he was required to pay as a condition of his probation. See *Harris v. State*, 261 Ga. 859, 860 (2) (413 SE2d 439) (1992) (trial court illegally increases a defendant's sentence when, after the defendant has begun serving that sentence, it increases the amount of restitution the defendant must pay). Specifically, Polly argues that the requirement that he provide proof of any child support payments obligated him to make those payments every week, whereas before he had been able to negotiate both the amount and timing of the payments with his ex-wife. We find no merit in this argument.

First, as Polly acknowledged at the hearing below, his obligation to make child support payments was imposed by a different court, at some time before he was convicted and sentenced in this case. He further acknowledged that he was under a court order to make those payments and that if his ex-wife reported to the court which entered that order that he was not paying child support, he would be jailed for

8

contempt. Moreover, the trial court in this case did not require that Polly make his child support payments. Rather, it required that Polly provide proof of any child support payments he did make, together with a written list of his other expenses and proof of any income. And the trial court imposed this condition after Polly represented, during his first probation revocation hearing, that he was delinquent in his restitution payments, at least in part, because of his child support obligations. Thus, it appears that the requirement that Polly provide verification of any child support payments was imposed as part of a condition designed to ensure that Polly was making, at the very least, all of the restitution payments he was financially capable of making. Given that fact, and given that it did not increase the amount Polly was obligated to pay as part of his sentence, the condition did not constitute an illegal increase in that sentence. *Staley*, 233 Ga. App. at 599 (an additional condition of probation that bears a logical relationship to the rehabilitative scheme of the sentence does not constitute an additional punishment).

2. Georgia law authorizes a trial court to revoke the entire balance of a defendant's probation only where the defendant has violated a special, rather than a

general, condition of that probation.[7] See *Jowers v. Washington*, 284 Ga. 478, 482 (2)

(668 SE2d 703) (2008); OCGA § 42-8-34.1 (e). And for a condition to constitute a

"special" condition, the sentencing document must specifically designate it as such

and must also state that failure to comply with the condition authorizes the court to

require the defendant to serve the balance of the sentence in confinement. *Gamble v.*

*State*, 290 Ga. App. 37, 39 (1) (658 SE2d 785) (2008); OCGA § 42-8-34.1 (a).

Here, Polly contends that the requirement that he provide proof of any child

support payments failed to meet the statutory requirement for a special condition, and

therefore must be considered a general condition of his probation. Even assuming that

the child support verification requirement represents only a general condition of

probation, that fact does not help Polly. The trial court based the revocation of Polly's

probation on his failure to comply with four different terms of his probation, including

his failure to comply with the special condition that he make restitution payments.[8]

Thus, because Polly admitted he had failed to make the required restitution payments,

---

[7] Where a defendant is found guilty of violating a general condition of
probation, the trial court may revoke no more than two years of the defendant's
probation. OCGA § 42-8-34.1 (c).

[8] Polly does not contest that the requirement he make the restitution payments
is a special condition of his probation.

the trial court did not abuse its discretion in revoking the entire balance of Polly's probation. See *Gray v. State*, 313 Ga. App. 470, 471 (722 SE2d 98) (2011) ("[t]his court will not interfere with a revocation unless there has been a manifest abuse of discretion on the part of the trial court") (citation and punctuation omitted).

3. Relying on the United States Supreme Court's holding in *Bearden v. Georgia*, 461 U. S. 660 (103 SCt 2064, 76 LE2d 221) (1983), Polly asserts that the trial court erred when it revoked his probation without determining whether Polly had the financial ability to make both the required monthly restitution payments and his child support payments. We disagree.

*Bearden* held that where "the State [through the sentencing court] determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." 461 U.S. at 667-668 (II). Thus, in revocation proceedings based on a defendant's failure to pay a fine or restitution *imposed unilaterally by the sentencing court*, that court "must inquire into the reasons for the failure to pay." (Emphasis omitted.) *Johnson v. State*, 307 Ga. App. 570, 571 (707 SE2d 373) (2011). Given its holding, *Bearden* does not apply to the instant case, as the trial court did not unilaterally impose the restitution payments at issue. Rather, Polly "negotiated and agreed to [all the terms of]

11

his probated sentence," including the condition requiring him to pay $500 per month in restitution, "to avoid incarceration." *Dickey v. State*, 257 Ga. App. 190, 192 (1) (570 SE2d 634) (2002).

In *Dickey*, the defendant pled guilty to theft by taking over $160,000 from his employer and negotiated a probated sentence that required him to make restitution by a certain date. Id. at 190-191. The defendant had paid only $2 by that date, and the trial court revoked his probation. Id. at 191. The defendant argued on appeal that the trial court erred because there was no evidence that his failure to pay was wilful – i.e., that he had the financial ability to pay the restitution. Id. at 191 (1). We rejected that argument, finding that the defendant's breach of the plea agreement he made with the State, under which he promised to pay significant restitution by a certain date in exchange for avoiding imprisonment, allowed the trial court to revoke the defendant's probation. Id. at 192 (1). We reasoned that when Dickey negotiated and entered the plea agreement, he

> knew that he would be required to pay $100,000 of restitution by [a certain date]. Dickey also knew, better than the assistant district attorney and the trial judge, whether he had the ability to make this payment. If Dickey had any doubt concerning his ability to make the payment, he should have informed the other parties before everyone agreed to the terms. There is no evidence that he did so. Dickey's silence, when he

12

should have spoken, and his ultimate breach, make him culpable. He was not without fault.

Id. Thus, the trial court did not err in revoking Dickey's probation and sentencing him to imprisonment in accordance with the plea agreement, because Dickey had "secure[d] his freedom by negotiating an agreement that require[d] restitution." Id. at 193 (1).

The same rationale applies in this case. The transcript of the plea hearing shows that Polly secured his freedom from incarceration by negotiating an agreement that required specific restitution payments. If Polly had doubts about his ability to meet these obligations, he should have so informed the State and declined the agreement. He did not do so. "Having breached the plea agreement that he negotiated, [Polly] cannot now insist that he remain on probation and be excused from performance due to indigence." *Dickey*, 257 Ga. App. at 193 (1) Accordingly, because Polly failed to comply with a specifically negotiated term of his plea agreement, the trial court acted properly in revoking his probation and sentencing him according to the terms of that agreement. Id.

4. The record shows that Polly was indicted jointly with his co-defendant on 18 of the 99 counts of which he was convicted. His co-defendant also entered into a

13

negotiated plea agreement, under which she agreed to pay $6,697.40 in restitution, and the record shows that she paid at least $5,300 of that amount. Citing OCGA § 17-14-6,[9] Polly argues that the trial court should have reduced the amount of restitution he was ordered to pay by the amount of restitution paid by his co-defendant. We disagree.

The flaw in Polly's argument is that it assumes he and his co-defendant stole no more than $30,000 from the victims. The evidence shows, however, that Polly and his co-defendant stole more than $43,000 from the victims.[10] Thus, even if both Polly and his co-defendant met their individual restitution obligations in their entirety, the victims would not be made whole. Given these circumstances, the trial court was not obligated to set off any restitution amounts paid by Polly's co-defendant against the amount of restitution paid by Polly.

---

[9] That statute provides, in relevant part, "[w]here an offender has made total or partial restitution to a victim, the ordering authority shall set off any such amounts and reduce the amount payable to the victim." OCGA § 17-14-6 (a).

[10] The record shows that Polly was charged individually in 81 counts with stealing (by various methods) $29,852.35 from the victims. He was charged jointly with his co-defendant in another 18 counts with stealing an additional $13,191.71 from the victims. Polly pled guilty to all charges.

5. In his final enumeration of error, Polly asserts that he received ineffective assistance of counsel with respect to his probation revocation. To prevail on a claim of ineffective assistance, Polly bears the burden of proving both that the performance of his lawyer was deficient and that he suffered prejudice as a result of this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984). If Polly cannot meet his burden of proving either prong of the *Strickland* test, then we need not examine the other prong. *Battles v. State*, 290 Ga. 226, 229 (2) (719 SE2d 423) (2011).

(a) Polly argues that his attorney performed deficiently at his first probation revocation hearing when the lawyer failed to object to the trial court adding the child support payment verification requirement as a condition of Polly's probation. As discussed in Division 1, however, that condition did not constitute an illegal increase in Polly's sentence and the trial court was therefore authorized to impose that condition. Accordingly, the failure of Polly's lawyer to object to this condition was not deficient performance and, therefore, does not constitute ineffective assistance of counsel. See *Gibson v. State*, 291 Ga. App. 183, 188 (3) (661 SE2d 850) (2009) ("[f]ailure to make a meritless or futile objection or motion cannot be evidence of ineffective assistance") (citation and punctuation omitted).

15

(b) Polly also claims that his lawyer provided ineffective assistance at his second probation revocation hearing, when the lawyer failed to provide evidence of Polly's inability to make restitution payments and when he stipulated that the additional probation conditions imposed at the first revocation hearing were special conditions of probation. Pretermitting whether this conduct constituted deficient performance by Polly's lawyer, Polly cannot show he suffered prejudice as a result of this conduct.

With respect to the lawyer's failure to introduce evidence of Polly's ability to pay restitution, Polly himself produced no such evidence at the hearing on his motion for a new probation revocation hearing. Given his failure to show either what evidence the lawyer should have introduced or that such evidence would have supported Polly's claim of financial inability to pay restitution, Polly cannot prove the prejudice prong of the *Strickland* test. *Wynn v. State*, 322 Ga. App. 66, 68 (4) (a) (744 SE2d 64) (2013) (where ineffective assistance claim is premised on trial counsel's failure to present certain evidence, defendant must make a proffer of that evidence and show it would have been favorable to him); *Pruitt v. State*, ___ Ga. App,. ___ (2) (Case No. A13A1355, decided August 8, 2013) ("[i]n considering an ineffectiveness claim, there is a strong presumption that counsel's conduct falls within the wide range of

16

reasonable professional assistance, and if trial counsel does not testify, it is extremely difficult to overcome this presumption") (citation and punctuation omitted).

Nor can Polly show that he was prejudiced by his lawyer's stipulation that the additional conditions of probation constituted special, rather than general, conditions of probation. As noted in Division 2, supra, Polly's failure to make the required restitution payments, without more, supported the trial court's revocation of his probation. Accordingly, Polly cannot show a "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U. S. at 694 (III) (B).

For all of the foregoing reasons, we affirm the trial court's denial of Polly's motion for a new probation revocation hearing.

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur*.